UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,          Criminal No. 12-CR-244 (JRT/LIB)

v.          **REPORT AND RECOMMENDATION**

Micah James Waybenais,

    Defendant.

---

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 23].[1] The case has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on March 12, 2013, regarding the suppression motion and Defendant's discovery motions.[2] For reasons outlined below, the Court recommends the motion to suppress statements be DENIED.

**I.     BACKGROUND**

Micah James Waybenais (Defendant) is charged with three counts of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a).[3] (Indictment [Docket No. 9]). The Government alleges that on or about September 11, 2012, Defendant assaulted three persons, B.S., D.S., and L.W. (Id.) The Government also alleges that Defendant

---

[1] At the hearing on January 24, 2013, Defendant on the record withdrew the portion of this motion concerning his statements of September 11, 2012, upon the Government's representation on the record that it did not intend to use any such statements in its case in chief.
[2] The discovery motions were the subject of a separate Order. [Docket No. 34].
[3] The Government brings these charges pursuant to 18 U.S.C. § 1151, which defines "Indian country" for purposes of Federal criminal jurisdiction, and 18 U.S.C. § 1153(a), which provides Federal jurisdiction of certain crimes, including assault resulting in serious bodily injury, where both the perpetrator and the alleged victim are Indian and the crime is alleged to have occurred in Indian country.

1

and all three alleged victims are Indians, and that the assaults occurred within the exterior boundaries of the Red Lake Indian Reservation. (Id.). Defendant was indicted on October 10, 2012, he was arraigned on October 16, 2012, and subsequently, he brought this motion to suppress, [Docket No. 23], on February 19, 2013.

## II.     FACTS[4]

On September 11, 2012, Special Agent Matthew A. Zavala (SA Zavala) of the Federal Bureau of Investigation (FBI) was called to the Red Lake Indian Reservation, where Defendant had been taken into custody by Red Lake Tribal Police on suspicion of assault. SA Zavala sought to interview Defendant at the tribal jail, but Defendant declined.

On September 25, 2012, SA Zavala and two other FBI agents were dispatched to the Red Lake Indian Reservation with a federal warrant to arrest Defendant and to transport him from the Red Lake jail to the Beltrami County jail. SA Zavala explained to Defendant that they were taking him into custody on a federal assault charge, and transporting him to Bemidji, Minnesota, to appear before a U.S. Magistrate Judge. SA Zavala described Defendant as awake, coherent, and even "somewhat upbeat."

On the drive to Bemidji, which SA Zavala said typically takes some 30 to 40 minutes, SA Zavala sat in the back seat with Defendant, who wore handcuffs and ankle shackles. SA Zavala testified that he made only casual conversation with Defendant about matters unrelated to the charges against Defendant,[5] and that he "purposely did not ask him any questions that had anything to do with the assault." SA Zavala testified that he steered away from discussing the

---

[4] The facts in this section are drawn from the testimony of FBI Special Agent Matthew A. Zavala at the March 12, 2013, hearing.
[5] SA Zavala testified that he only asked Defendant things such as: how he was doing; and what it was like growing up on the Reservation. SA Zavala characterized his discussions with Defendant as "very superficial conversation."

2

pending charges with Defendant because Defendant had declined to be interviewed on September 11, 2012. Nonetheless, SA Zavala testified that during the trip Defendant made "several utterances . . . that he blurted out on his own" concerning the charges against him. SA Zavala testified that he did not ask follow-up questions to Defendant's comments concerning the charges.

**III. DISCUSSION**

Defendant argues that SA Zavala engaged in the "functional equivalent of interrogation" on September 25, 2012, when he engaged in conversation with Defendant during the drive from the Red Lake Jail to Bemidji, Minnesota. Because SA Zavala did not advise Defendant of his Miranda rights,[6] Defendant alleges that the conversation violated his Fifth Amendment right against self-incrimination,[7] and therefore he asks this Court to suppress any statements he made during transport on September 25, 2012.

**A. Standard of Review**

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).

---

[6] Miranda v. Arizona, 384 U.S. 436, 444 (1966).
[7] In the present case, we analyze Defendant's motion to suppress pursuant only to the Fifth Amendment right against self-incrimination, because there is no evidence his Sixth Amendment right to counsel had been invoked or attached as of September 25, 2012, when the statements at issue here were made.

3

However, "[v]oluntary statements that are not in response to interrogation are admissible with or without the giving of Miranda warnings." United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005).

"[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). "When a suspect in custody makes spontaneous statements to an officer, no interrogation can be imputed to the officer." United States v. Martinez, No. 12-cr-26(2) (JRT/JSM), 2012 U.S. Dist. LEXIS 175978, at *9 (D. Minn. Dec. 12, 2012) (citing United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997).

**B. Analysis**

There is no dispute that Defendant was in custody at the time that he made the September 25th statements at issue here. There also is no question that SA Zavala did not engage in "express questioning," as there is no evidence in the record to show that he asked Defendant any specific questions about the alleged assault. The question before the Court, then, is whether SA Zavala's casual conversation with defendant was "reasonably likely to elicit an incriminating response." The Court concludes that it was not.

The Eighth Circuit considered this very issue in United States v. Tail, 459 F.3d 854 (8th Cir. 2006). In that case, the defendant sought to suppress statements he made during a "minimal, but polite conversation" with an FBI agent while the agent transported him from the Pine Ridge Jail on the Pine Ridge Indian Reservation to the federal courthouse in Rapid City, South Dakota. Id. at 856-57. In Tail, "[t]here [was] no suggestion that Agent Lauck asked Tail any questions or steered the conversation toward potentially incriminating topics. To the contrary, Lauck testified

4

that he intentionally avoided questioning Tail and kept his own answers to Tail's questions short." Id. at 857-58. On those facts, the Eighth Circuit affirmed the District Court, concluding that "[p]olite conversation is not the functional equivalent of interrogation." Id. at 858. Likewise, in the present case, SA Zavala testified that he intentionally avoided asking Defendant any questions about the pending charges.

Moreover, in United States v. Fleck, 413 F.3d 883 (8th Cir. 2005), the Eighth Circuit held that even some discussion of the pending charges might not rise to the level of "the functional equivalent of interrogation." In Fleck, the defendants sought to suppress statements made in the presence of a Bureau of Alcohol, Tobacco, Firearms, and Explosives agent who was transporting the defendants from the jail in Douglas County, Nebraska, into federal custody. Id. at 889. During transport, the defendants asked the agent what crime they were charged with, and he answered that they were charged with being felons in possession of a firearm. Id. The defendants responded by making incriminating statements about the firearms in question. Id. The Eighth Circuit held that the defendants' statements:

> were not the product of interrogation, but were volunteered. [Special Agent] Rush testified that the only thing he remembered asking the two was how they liked the food at the Douglas County Jail. It can hardly be said that this was in some way calculated to elicit an incriminating response from either brother.

Id. at 893. Similarly, in the present case, SA Zavala testified that his casual conversation included only general questions of Defendant, such as how he was doing, and what it was like growing up on the Reservation. On this record, it cannot be said that SA Zavala should have known that these general questions would be reasonably likely to elicit an incriminating response from Defendant. United States v. Love, No. 06-cr-356 (MJD/JJG), 2006 U.S. Dist. LEXIS 99293 (D. Minn. Dec. 7, 2006) (Graham, M.J.) (simple greeting in the form of a question was "not an inquiry about any crime Love allegedly committed,. . . [and] therefore, was not the sort

5

of express questioning to which the privilege of self-incrimination attaches), adopted by 2007 U.S. Dist. LEXIS 101578 (D. Minn. Jan. 3, 2007); see also United States v. Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984) (officer's statement to defendant about a prior meeting between them did not constitute interrogation because the officer did not know that his remarks would likely elicit an incriminating response).

Where courts have found an officer's words or actions to be the "functional equivalent of interrogation," those words or actions have been much more problematic than we see in the present case. For example, in Love, the officer's initial question, which the Court described as "a simple greeting," was not the functional equivalent of interrogation. 2006 U.S. Dist. LEXIS 99293, at *9.

> However, Love went on to say that he had done nothing wrong, and Daly replied that robbing a bank was wrong. This comment amounted to an accusation that Love had committed a bank robbery, and under the circumstances, Daly had reason to know that this comment would elicit an incriminating response. And the ensuing comment by Love was not a spontaneous utterance, but instead was a direct answer to the preceding accusation.
>
> Because Daly engaged in the functional equivalent of interrogation before Love received a Miranda warning, there was a violation of the privilege against self-incrimination and the ensuing statement is appropriately suppressed.

Id. at *9-10. In the present case, there is no evidence that SA Zavala made any accusations about Defendant that would have been expected to elicite a response. Instead, the evidence indicates only that Defendant volunteered potentially incriminating information, and that SA Zavala did not ask any follow-up questions or otherwise respond.

Just as "[p]olite conversation is not the functional equivalent of interrogation," Tail, 459 F.3d at 858, the "superficial conversation" between SA Zavala and Defendant was not the functional equivalent of interrogation. Consequently, the Court recommends that the

6

Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 23] be

DENIED.

IV. **CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 23] be **DENIED**.

Dated: March 15, 2012                                        /s/ Leo I. Brisbois_____
                                                             LEO I. BRISBOIS
                                                             United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 29, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.